UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WILLIAM J. AUBIN, ET AL.                                            CIVIL ACTION

VERSUS

COLUMBIA CASUALTY COMPANY,
ET AL.                                                              NO.: 16-00290-BAJ-EWD

RULING AND ORDER

Before the Court is the **Motion to Dismiss Pursuant to Rule 12(B)(6) (sic) (Doc. 13)** and the **Motion to Dismiss Amended Comaplint (sic) Pursuant to Rule 12(B)(6) (sic) (Doc. 34)** filed by Jason Ard, Sheriff of Livingston Parish, State of Louisiana ("Sheriff Ard"). In his motions, Sheriff Ard seeks to dismiss William Aubin's claims against him for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Each party filed oppositions (Docs. 17, 37), replies (Docs. 28, 44), sur-replies (Doc. 32), and sur-sur replies (Doc. 39) where applicable. Jurisdiction is proper under 28 U.S.C. § 1331. Oral argument on Defendant's motions was held on January 31, 2017.

I.  BACKGROUND

This action arises out of a physical altercation between Mr. Aubin and Deputy William Durkin ("Deputy Durkin") that occurred on April 30, 2015. On that date, Plaintiffs assert that they were at their home near Denham Springs, Louisiana, when Deputy Durkin drove down the street in a marked patrol car, allegedly responding to a complaint concerning Plaintiffs' neighbor. (Doc. 1 at ¶¶ 6, 7). Plaintiffs allege that they approached Deputy Durkin to discuss the matter concerning their neighbor with

1

him, at which time Plaintiffs allege Deputy Durkin began cursing at Mr. Aubin and threatened to arrest him. (Doc. 1 at ¶¶ 10 – 12). Plaintiffs further allege that Mr. Aubin began retreating toward his home and attempted to place a telephone call to the Sheriff's Office to file a complaint about Deputy Durkin's conduct when Deputy Durkin grabbed Mr. Aubin, threw him on the front of his patrol unit, began hitting him on the head with handcuffs, twisted his arm, causing injury to his rotator cuff, hit him in the head and kicked him in the buttocks. (Doc. 1 at ¶¶ 13 – 17). The Complaint alleges that Mr. Aubin was handcuffed and charged with resisting an officer in violation of La. R.S. § 14:108; interfering with a law enforcement investigation in violation of La. R.S. § 14:329; and public intimidation and retaliation in violation of La. R.S. § 14:122.

As a result of this alleged incident, Plaintiffs assert that Deputy Durkin is liable for "(a) battery, (b) assault, (c) false arrest, (d) false imprisonment, (e) unlawful seizure, (f) cruel and unusual treatment, (g) violation of the Constitution and other laws of the United States and of the State of Louisiana, (h) excessive use of force, (i) unreasonable use of force, (j) malicious prosecution, and for all other acts and omissions as will be shown at trial." (Doc. 1 at ¶ 29). Plaintiffs also allege that Deputy Durkin is liable for assault upon Mrs. Aubin and for her loss of consortium. (Doc. 1 at ¶¶ 30 – 32).

Plaintiffs further assert that "[Sheriff] Ard is vicariously liable unto the Aubins as a matter of Louisiana state law for the acts, omissions, torts and/or other misconduct of Durkin" and "for his ratification and endorsement of, and deliberate

indifference to, the Conduct of Durkin, as well as for his failure to adequately train and supervise Durkin." (Doc. 1 at ¶¶ 33 – 34).

Sheriff Ard filed his initial Motion to Dismiss (Doc. 13) on June 13, 2016, seeking to dismiss "all federal law claims asserted against Sheriff Ard, as well as all claims of independent liability under Louisiana state law." (Doc. 13-2 at p. 1). In response to Sheriff Ard's motion, Plaintiffs filed an Amended Complaint in accordance with Federal Rule of Civil Procedure ("Rule") 15(a)(1)(B), which they claim mooted Sheriff Ard's initial motion. (*See* Docs. 16, 17). Plaintiffs' Amended Complaint adds the following allegations against Sheriff Ard:

\*\*\*

60.

... Sheriff Ard failed to train and supervise his deputies, including Durkin, in the First Amendment protection of the speech of residents of Livingston Parish, including William Aubin, and in the proper, constitutional, scope of Louisiana's public intimidation law.

61.

To the contrary, Sheriff Ard's official policy is that his deputies are ministers of God, who derive their just authority from God, and who have a divine commission to punish wrongdoers including, allegedly, William Aubin in this case.

62.

In particular, Sheriff Ard has testified that his deputies' divine authority is explained in Paul's epistle to the Romans, chapter 13, verse 4, and, accordingly, Sheriff Ard has emblazoned "13:4" on the Livingston Parish Sheriff's deputies badge and patrol cars.

63.

Sheriff Ard has also testified that he expects all of his deputies to know that their authority comes directly from God.

3

64.

Accordingly, the moving force behind Durkin's arrest of William Aubin for William Aubin's constitutionally-protected speech was Sheriff Ard's unconstitutional policy that his deputies are ministers of God who derive their authority from God.

\*\*\*

Sheriff Ard thereafter filed a motion dismiss the Amended Complaint as failing to state a valid claim for relief. (Doc. 34).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, a complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

4

Further, the United States Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (internal citations omitted). When a complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

### III. DISCUSSION

Before addressing the substantive claims contained in Sheriff Ard's motion to dismiss, the Court finds it appropriate to identify the universe of pleadings properly before it. Plaintiffs filed their Original Complaint (Doc. 1) on April 28, 2016, and filed their Amended Complaint (Doc. 16) on July 5, 2016. Plaintiffs' Amended Complaint did not *specifically* incorporate all of the facts and allegations contained in the Original Complaint. (*See* Doc. 16). As such, it would seem that the Court should only consider the allegations contained in the Amended Complaint. *See Stewart v. City of Houston Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010) (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."). However,

although Plaintiffs did not include a specific statement incorporating all of the facts and allegations contained in the Original Complaint, the Amended Complaint does continue the numbering system of the Original Complaint, which this Court finds sufficient to incorporate all of the previously pleaded factual allegations. *See also Athletic Training Innovations, LLC v. eTags, Inc.*, 2013 WL 3216135 (E.D. La. June 24, 2013) (not reported) (finding that the deliberate numbering of new claims in the amended complaint was sufficient to enable the defendant to determine the extent and nature of the incorporation of the original complaint). As such, the Court will refer to both the Original and Amended Complaints (Docs. 1 and 16) in addressing Sheriff Ard's motion to dismiss.[1]

### A. CLAIMS AGAINST SHERIFF ARD IN HIS INDIVIDUAL CAPACITY

Plaintiffs have alleged that Sheriff Ard is vicariously liable as a matter of state law for Deputy Durkin's actions. (Doc. 1 at ¶ 33). It is unclear from this allegation whether Plaintiffs argue that Sheriff Ard is vicariously liable for any alleged constitutional violations committed by Deputy Durkin. To the extent Plaintiffs make such an assertion, it is without merit as it is an established principle of law that "[s]upervisory officials cannot be held liable under section 1983 for the actions of subordinates ... on any theory of vicarious or respondeat superior liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). As such, any attempt to hold Sheriff Ard vicariously liable under Section 1983 must fail. Further, because Sheriff

---

[1] Notably, because the Amended Complaint contains the lion's share of the factual allegations against Sheriff Ard, the Court's pinpointing the effective documents properly before it has no substantial effect on the outcome of the Court's ruling on the motions *sub judice*.

6

Ard does not move for dismissal of any claims for his vicarious liability arising under Louisiana state law (see Doc. 13-2 at n. 1), the Court does not address the substance of those claims.

Plaintiffs also attempt to establish Sheriff Ard's individual liability under Section 1983 by demonstrating that his independent failure to effectively train and supervise Deputy Durkin resulted in a deprivation of Plaintiffs' constitutional rights. (Doc. 1 at ¶ 34, Doc. 16 at ¶ 60). To make such a showing, Plaintiffs must allege "(1) [Sheriff Ard's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between [Sheriff Ard's] wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Because Plaintiffs do not allege that Sheriff Ard had any personal involvement in the constitutional deprivation, Plaintiffs must demonstrate a causal connection by alleging that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoesttsy*, 158 F.3d 908, 911–12 (5th Cir. 1998).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). To demonstrate deliberate indifference, a plaintiff must allege: "(1) a pattern of similar violations; (2) that the inadequacy of the training was obvious; and (3) that the inadequacy of the training was obviously

7

likely to result in a constitutional violation." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference. *Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir. 1998) (generally requiring that a plaintiff demonstrate at least a pattern of similar violations); *Thompkins*, 828 F.2d at 304–305.

The Court finds that Plaintiffs' allegations of individual liability against Sheriff Ard satisfy the above-enumerated requirements. In addition to the allegation that "Sheriff Ard failed to train and supervise his deputies, including Durkin, in the First Amendment protection of the speech of residents of Livingston Parish," (Doc. 16 at ¶ 60), Plaintiffs link Deputy Durkin's actions with Sheriff Ard's failure to properly train his deputies in First Amendment protections. Further, Plaintiffs make a legally cognizable showing of deliberate indifference with the information currently available to them. Namely, Plaintiffs adequately allege—even if only by implication—that Sheriff Ard should have been aware of the alleged deficient training through reference to his deposition testimony in a similar case, and that the asserted inadequacy of training would obviously result in the constitutional deprivations allegedly experienced by Mr. Aubin.

The Court recognizes that a plaintiff suing governmental officials in their individual capacities must allege specific conduct giving rise to a constitutional violation. *Anderson*, 184 F.3d at 443. This standard requires "more than conclusory

assertions"; a plaintiff must allege specific facts giving rise to a constitutional violation. *Baker*, 75 F.3d at 195. Plaintiffs' allegations of independent supervisor liability contain sufficient facts to overcome Sheriff Ard's motion to dismiss. As such, Sheriff Ard's motion to dismiss individual capacity claims asserted against him must be **DENIED**.

### B. CLAIMS AGAINST SHERIFF ARD IN HIS OFFICIAL CAPACITY

Plaintiffs also assert claims against Sheriff Ard in his official capacity, asserting that as he implemented policies that resulted in his deputies committing constitutional violations. (*See* Doc. 1 at ¶ 34, Doc. 16 at ¶¶ 61 – 64). A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent. *Burge,* 187 F.3d at 466 (citing *Monell v. New York City Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 691 n. 55 (1978)). Accordingly, the claims against Sheriff Ard in his official capacity as Sheriff are, in effect, claims against the municipal entity he represents, which is Livingston Parish. *Graham*, 473 U.S. at 165; *see also Bellard v. Gautreaux*, No. CIV.A. 08-627, 2010 WL 3523051, at *4 (M.D. La. Sept. 3, 2010) *amended in part*, No. CIV.A. 08-627, 2010 WL 4977480 (M.D. La. Dec. 2, 2010), *affirmed*, 675 F.3d 454 (5th Cir. 2012) and *affirmed*, 675 F.3d 454 (5th Cir. 2012).

Municipalities and other local government entities may be held liable under Section 1983 for the constitutional torts of its agents only when an official policy of the entity itself caused the deprivation of the plaintiff's rights. *Monell*, 436 U.S. 658; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-79 (1986). To succeed on such a

9

claim, Plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

The Fifth Circuit defines an official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). Although "a single decision may create [local entity] liability *if* that decision were made by a final policymaker responsible for that activity," *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (internal quotations and citations omitted) (emphasis in original), absent an official policy, actions of officers or employees of local government entities do not render the entity liable under § 1983.[2] *Id.*

---

[2] Indeed, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, a municipality cannot be held liable under § 1983 for the tortious behavior of its employees under a theory of respondeat superior. *Id.*

After reviewing the pleadings, the Court finds that Plaintiffs have asserted sufficient factual allegations to state a viable claim against Sheriff Ard in his official capacity, and therefore survive Sheriff Ard's motion to dismiss. Construing as true the factual allegations that Sheriff Ard is the official policymaker of the Livingston Parish Sheriff's Office and that he implemented an official policy of commissioning his deputies as ministers of God, Plaintiffs have, at this stage, sufficiently alleged that Sheriff Ard's "policy" may have motivated Deputy Durkin to engage with Plaintiffs in the manner described in the Complaint. The Court emphasizes that the Complaint need not set out detailed factual allegations; as long as Plaintiffs satisfy the liberal pleading standard requiring the statement of a plausible claim against Sheriff Ard, Plaintiffs are entitled to propound discovery to unearth any additional facts necessary to demonstrate the validity of their claims against Sheriff Ard. Plaintiffs have satisfied the aforementioned pleading obligations imposed on them by the Federal Rules of Civil Procedure, and have adequately alleged facts demonstrating that Sheriff Ard (1) implemented an official policy, (2) was the source of that alleged policy and can be charged with constructive knowledge of the policy—which Plaintiffs link to Sheriff Ard's previous deposition testimony—and (3) implemented a policy that was the moving force behind Deputy Durkin's actions.

Accordingly, as Plaintiffs have argued, it would be inappropriate for the Court to dismiss Plaintiff's claims against Sheriff Ard at this early stage. As such, Plaintiffs' claims against Sheriff Ard in his official survive the motion to dismiss.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss Pursuant to Rule 12(B)(6) (sic) (Doc. 13)** filed by Sheriff Ard is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that and the **Motion to Dismiss Amended Comaplint (sic) Pursuant to Rule 12(B)(6) (sic) (Doc. 34)** is **DENIED**.

Baton Rouge, Louisiana, this 24th day of March, 2017.

*[signature]*

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**