UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WILLIAM AUBIN ET AL.                                    CIVIL ACTION

VERSUS

COLUMBIA CASUALTY COMPMAY,                              NO.: 16-00290-BAJ-EWD
ET AL.

## RULING AND ORDER

The right to criticize police without risk of arrest distinguishes a democracy from a police state. Here, however, a Sheriff's Deputy arrested Plaintiff for announcing "I'm gonna get you fired" and "I'm gonna have your job." The Livingston Parish Sheriff allegedly adopted a policy condoning this practice, permitting officers to arrest anyone who threatens an officer's employment. Yet our Constitution guarantees a citizen's right to criticize government officials without fear of retribution.

\*\*

Before the Court is the **Motion for Partial Summary Judgment (Doc. 41)**, and the **Motion to Strike (Doc. 81)** filed by Plaintiffs William Aubin and April Aubin, and the **Motion to Dismiss (Doc. 119)** filed by Defendant Sheriff Jason Ard. Each party filed oppositions, (Docs. 77, 85, 124), and replies (Docs. 87, 94). For the following reasons, the **Motion for Partial Summary Judgment (Doc. 41)** and the **Motion to Dismiss (Doc. 119)** are **GRANTED IN PART AND DENIED IN PART**. The **Motion to Strike (Doc. 81)** is **DENIED**.

1

I. BACKGROUND

Plaintiffs allege that on April 30, 2015, Deputy William Durkin arrived in their neighborhood near Denham Springs, Louisiana in response to a complaint about their neighbor. (Doc. 117 at ¶ 6–7). Plaintiffs claim that when they approached Deputy Durkin, the Deputy told Mr. Aubin to "stand back and shut his mouth." *Id.* at ¶ 8–9. Plaintiffs allege that Deputy Durkin then called Ms. Aubin a "pussy" and when Mr. Aubin asked Deputy Durkin not to curse in front of his wife, Deputy Durkin said "one more time and your pussy ass is going to jail." *Id.* at ¶ 10–11. Plaintiffs assert that Mr. Aubin then told Deputy Durkin that he was going to call the Deputy's supervisor to complain about him and that he said "I'm gonna get you fired" and "I'm gonna have your job." *Id.* at ¶¶ 14–15, 58.

Plaintiffs claim that Deputy Durkin then hit Mr. Aubin in the head with his handcuffs, twisted his arm behind his back, kicked him in the legs and buttocks, and threw him on his patrol car. *Id.* at ¶ 15–18. Plaintiffs allege that when Ms. Aubin asked what was happening, Deputy Durkin said "Shut up bitch before I take you with the dumb ass." *Id.* at ¶ 24. Plaintiffs allege that Mr. Aubin was charged with resisting an officer, interfering with a law enforcement investigation, and public intimidation. *Id.* at ¶ 27. Plaintiffs claim that the charges were later dismissed. *Id.* at ¶ 28.

Plaintiffs filed suit against Deputy Durkin, in his individual capacity, against Livingston Parish Sheriff Jason Ard, individually and in his official capacity, and against Columbia Casualty Company. (Doc. 117 at p. 1). Mr. Aubin claims that

Deputy Durkin is liable for battery, assault, false arrest, false imprisonment, unlawful seizure, cruel treatment, excessive and unreasonable use of force, and malicious prosecution. *Id.* at ¶ 29. Ms. Aubin claims that Deputy Durkin is liable for assault and for loss of consortium. *Id.* at ¶ 30–32. Plaintiffs allege that Sheriff Ard is also vicariously liable for Deputy Durkin's actions and for his failure to adequately train and supervise Deputy Durkin. *Id.* at ¶ 33–34. Plaintiffs further allege that Louisiana's public intimidation statute is unconstitutional. *Id.* at ¶ 41–45.

On March 24, 2017, the Court denied Sheriff Ard's Motion to Dismiss, in which he sought to dismiss all federal and certain state law claims against him. (Doc. 88). On June 12, 2017, the Magistrate Judge granted Plaintiff's Motion for Leave to File a Second Amended Complaint. (Doc. 116). On September 15, 2017, the Court stayed the constitutional challenge to the public intimidation statute pending the resolution of a related appeal. (Doc. 132).

## II. DISCUSSION

### A. Sheriff Ard's Motion to Dismiss

Sheriff Ard moves to dismiss the official and individual capacity claims brought against him under § 1983, as well as a state law claim for failure to train.[1] (Doc. 119-1 at p. 1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short

---

[1] Plaintiffs state law failure to train claim is dismissed because it is expressly barred by La. R.S. § 9:2798.1(B), which provides public officials with immunity for discretionary functions like training. *See Smith v. Lafayette Parish Sheriff's Dpt.*, 874 So.2d 863, 867 (La. Ct. App. 2004); *Hoffpauir v. Columbia Cas. Co.*, No. 12-CV-403, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013) (holding that public officials are immune from suit for discretionary functions like training under Louisiana law).

and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### 1. Official Capacity Claim

Plaintiffs claim that Sheriff Ard is liable in his official capacity because he has an official policy or custom that his deputies may arrest anyone who makes threats against their jobs. (Doc. 117 at ¶ 61). Municipalities and other local government entities may be held liable under § 1983 for the constitutional torts of its agents only when an official policy of the entity itself caused the deprivation of the plaintiffs'

4

rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477–79 (1986). To succeed on such a claim, a plaintiff must establish: "(1) an official policy (or custom), of which (2) a policy maker[2] can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

An official policy includes:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Id.*

Sheriff Ard argues that Plaintiffs have not adequately plead facts to establish that Sheriff Ard officially promulgated and adopted the policy at issue. (Doc. 119-1 at p. 7–8). Plaintiffs allege, however, that Sheriff Ard has an official policy that his deputies may arrest anyone who makes threats against their jobs, (Doc. 117 at ¶ 61), including for making statements like "I'm gonna have your job" and "I'm gonna get you fired." *Id.* at ¶ 62. Plaintiffs further allege that at least two of Deputy Durkin's supervisors informed him that anyone who threatens his job may be arrested for public intimidation. *Id.* at ¶ 63. Considering these allegations, it is plausible that Sheriff Ard officially adopted and promulgated the policy in question because two

---

[2] Sheriff Ard does not dispute that he is a policymaker. (Doc. 119).

supervisors allegedly confirmed the same policy to Deputy Durkin. At this stage, the Court is permitted to draw reasonable inferences from the facts alleged. *Ashcroft*, 556 U.S. at 679.

Sheriff Ard next argues that Plaintiffs have not alleged that his policy was adopted with deliberate indifference. (Doc. 119-1 at 9). A facially innocuous policy must be promulgated with deliberate indifference to support § 1983 liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 579–80 (5th Cir. 2001). In contrast, an "unconstitutional official policy renders a municipality culpable under § 1983," without any need to consider deliberate indifference. *Id.*

Sheriff's Ard's alleged policy, which allegedly provides that his deputies may arrest anyone who threatens their jobs is patently unconstitutional. Only threats that constitute "true threats" are not protected by the First Amendment. "True threats" are "statements where the speaker means to communicate a serious expression of an intent to commit an act of *unlawful violence* to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added). The prohibition on "true threats" protects people "from the fear of violence." *Id.* Threatening to take non-violent action does not constitute a "true threat." *See Id.* However, Sheriff's Ard's purported policy permits deputies to arrest anyone who threatens to have them fired, which is a decidedly non-violent action. This alleged policy is patently and obviously unconstitutional and Plaintiffs need not establish deliberate indifference. Accordingly, Sheriff Ard's Motion to Dismiss Plaintiffs' official capacity claim is denied.

## 2. Individual Capacity Claim

Plaintiffs claim that Sheriff Ard is liable in his individual capacity under a theory of supervisory liability because he improperly trained his deputies about the First Amendment protections guaranteed to residents of Livingston Parish. (Doc. 117 at ¶ 60). To establish supervisory liability under § 1983, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Brauner v. Coody*, 793 F.3d 493, 501 (5th Cir. 2015). A plaintiff must allege with specificity how a training program is defective. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). A plaintiff can establish deliberate indifference "based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure to train." *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 397 (5th Cir. 2017) (internal quotation omitted).

The Court finds that Plaintiffs' allegations of individual liability against Sheriff Ard satisfy the above-enumerated requirements. In addition to alleging that "Sheriff Ard failed to train and supervise his deputies, including Durkin, in the First Amendment protection of the speech of residents of Livingston Parish," (Doc. 117 at ¶ 60), Plaintiffs link Deputy Durkin's actions with Sheriff Ard's failure to properly train his deputies in First Amendment protections because Mr. Aubin was arrested for merely threatening to have Deputy Durkin fired. *Id.* at ¶ 58. Further, Plaintiffs make a legally cognizable showing of deliberate indifference because Mr. Aubin's

arrest was the highly predictable consequence of Sheriff Ard's alleged failure to train his deputies on First Amendment protections afforded to citizens of Livingston Parish, and indeed all persons in the United States. As previously offered in the Court's ruling on the official capacity claim against Sheriff Ard, it is patently unconstitutional to direct officers to arrest someone for threatening to have someone fired. Sheriff Ard's motion to dismiss the individual capacity claim asserted against him is denied.[3]

### B. Plaintiffs' Motion for Partial Summary Judgment

Mr. Aubin moves for summary judgment on his state law malicious prosecution, false arrest, and battery claims. (Doc. 41). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th

---

[3] Sheriff Ard is also not entitled to qualified immunity on the failure to train claim because it is clearly established that non-violent threats are protected by the First Amendment. *See Black*, 538 U.S. at 359 (2003).

Cir.1994)). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Id.* at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### 1. The Probable Cause Affidavit

Before addressing the substance of the Motion for Partial Summary Judgment, the Court must address the Motion to Strike filed by Plaintiffs. (*See* Doc. 81). Plaintiffs argue that the affidavit of probable cause, which is attached to Defendants Opposition to Plaintiffs Motion for Partial Summary Judgment, (Doc. 77-3), should be stricken because it is not authenticated, not genuine, and incomplete, and that it can never be presented in an admissible form. (Doc. 90-3). The affidavit of probable cause, signed the day after Mr. Aubin's arrest, includes a determination by a Louisiana state court judge that there is probable cause to continue to hold Mr. Aubin. (Doc. 77-3).

Before 2010, the Fifth Circuit held that "[u]nauthenticated documents are improper as summary judgment evidence." *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). The 2010 Amendments to the Federal Rules of Civil Procedure eliminated

9

this requirement. *See, e.g., Valentine v. Hodnett*, No. 5:14-CV-72, 2015 WL 12942069, at *3 (S.D. Tex. Sept. 16, 2015); *Akers v. Beal Bank*, 845 F. Supp. 2d 238 (D.D.C. 2012). Under the current Rule, a party can support a motion for summary judgment with evidence that could be admissible at trial, even if it is not authenticated in a summary judgment motion. *See* Fed. R. Civ. P. 56(c)(2).

Defendants suggest that they can authenticate the probable cause affidavit by obtaining a certified copy of the record, by calling the records custodian to testify as to its authenticity, or by calling a person familiar with the signature on the affidavit at trial. (Doc. 86 at p. 5–6). Defendants have therefore demonstrated that they can present the affidavit in an admissible form at trial. Thus, Plaintiffs' Motion to Strike is denied.

### 2. False Arrest

Under Louisiana law, "a law enforcement officer may arrest a person without a warrant when that officer has 'reasonable cause' to believe that the person to be arrested has committed an offense." *State v. Smith*, 960 So.2d 369, 375 (La. Ct. App. 2007) (quoting La. C. Cr. P. art. 213). This requires that an officer have something similar to probable cause. *Id.*

Deputy Durkin argues that he is shielded from liability for false arrest because a judge determined that probable existed to arrest Mr. Aubin. (Doc. 77 at p. 12). This argument misunderstands the applicable law. "Under Louisiana law, if a person is arrested pursuant to a valid warrant, there is no false arrest and false imprisonment." *Jenkins v. Baldwin*, 801 So.2d 485, 496 (La. Ct. App. 2001). Deputy

Durkin points to no Louisiana case, and the Court is not aware of any, which provides that an officer is shielded from liability for false arrest because a judge *later* determines that probable cause existed for the arrest.[4]

The facts taken in the light most favorable to Deputy Durkin establish that Mr. Aubin was arrested without a warrant on April 30, 2015, at approximately 9:00 PM. (Doc. 77-3 at p. 1). The next morning, based on a probable cause affidavit, a Louisiana state court judge determined that there was "probable cause to continue to hold" Mr. Aubin. *Id.* Because Mr. Aubin was not arrested with a warrant, Deputy Durkin is not shielded from liability for false arrest. The Court must therefore determine whether Deputy Durkin had probable cause to arrest Mr. Aubin in the first instance.

Deputy Durkin argues that he had probable cause to arrest Mr. Aubin for interference with a law enforcement investigation and public intimidation. (Doc. 77-1 at p. 10). The Louisiana crime of interference with a law enforcement investigation is defined as:

> the intentional interference or obstruction of a law enforcement officer conducting investigative work *at the scene of a crime or the scene of an accident* by refusing to move or leave the immediate scene of the crime or the accident when ordered to do so by the law enforcement officer when the offender has reasonable grounds to believe the officer is acting in the performance of his official duties.

---

[4] Apparently recognizing this limitation, Deputy Durkin argues that the federal independent intermediary doctrine should apply, which precludes a § 1983 false arrest claim if there is a post-arrest probable cause determination by a judge. (Doc. 77 at p. 10–11). The question here, however, is whether Mr. Aubin has a claim under Louisiana state law for false arrest, and the Louisiana Supreme Court has made clear that the Louisiana constitution is not merely coextensive with the U.S. Constitution. *State v. Jackson*, 764 So. 2d 64, 71 (La. 2000).

La. R.S. 14:329 (emphasis added).

Here, the facts taken in the light most favorable to Deputy Durkin establish that he responded to Mr. Aubin's neighbor's house, 30650 Anderson Drive, for a reckless driving complaint. (Doc. 81-2 at p. 1). Deputy Durkin, however testified in his deposition that Mr. Aubin never went onto his neighbor's property, but that he remained in the right of way. (Doc. 87-1 at 198:10–19). First, the Court finds that the location from which a citizen makes a complaint does not qualify as the scene of a crime or accident. Otherwise, the statute would have specified that intentional interference with law enforcement may occur at the scene of a crime, the scene of an accident, *or* at the scene of a complaint. Additionally, even if Mr. Aubin's neighbor's house qualified as the scene of a crime or accident, Deputy Durkin himself testified that Mr. Aubin never went onto his neighbor's property during his exchange with him. (Doc. 87-1 at 198:10–19). Therefore, Deputy Durkin did not have probable cause to arrest Mr. Aubin for interference with a law enforcement investigation.[5]

Deputy Durkin next argues that he had probable cause to arrest Mr. Aubin for violating La. R.S. § 14:122, the public intimidation statute. (Doc. 77 at p. 5). The statute provides that "[p]ublic intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty: (1) Public officer or public employee." In *State*

---

[5] Mr. Aubin was also arrested for resisting arrest. (Doc. 77-2 at ¶ 21). However, even in the light most favorable to Deputy Durkin, any resistance occurred after he was placed under arrest for public intimidation and/or interference with law enforcement. (*See* Doc. 77-2). The Court need not examine whether there was probable cause to arrest Mr. Aubin for actions that took place after he was initially arrested.

12

*v. Mouton*, a Louisiana Circuit Court of Appeals affirmed a defendant's conviction under the public intimidation statute for threatening have him fired and threatening to sue him. *See State v. Mouton*, 129 So. 3d 49, 54 (La. Ct. App. 2013).

The evidence in the light most favorable to Deputy Durkin establishes that on April 30, 2015, he was dispatched to an address in Denham Springs, Louisiana in reference to a citizen complaint. (Doc. 77-2 at ¶3). When he arrived at the address, Ms. Aubin flagged Deputy Durkin down to complain that a motorist had yelled at her and made a gesture at her. *Id.* at ¶ 5. As Deputy Durkin began to explain that making such a gesture was not illegal, Mr. Aubin began to yell at Deputy Durkin and told him that he would decide what was illegal. *Id.* at ¶ 6. Deputy Durkin told Mr. Aubin that he did not need to hear from him, and Mr. Aubin said "oh, you're the punk that did me wrong the other day," and then he said "I'm calling your supervisor, I'm going to have your job, I'm going to get you fired." *Id.* at ¶ 8–9. Deputy Durkin informed Mr. Aubin that if he threatened his job again, he would be arrested for public intimidation, at which point Mr. Aubin said "I'm gonna have your job." *Id.* at ¶ 10–11. Deputy Durkin then informed Mr. Aubin that he was under arrest for public intimidation and after a struggle, Deputy Durkin placed him under arrest. *Id.* at 12–20.

The instant case is therefore like *Mouton*, where the court upheld a conviction for public intimidation when the defendant threatened to have an officer fired. Deputy Durkin therefore had probable cause to arrest Mr. Aubin. This does not end the Court's inquiry, however, because Deputy Durkin relied on a statute that was

13

recently declared unconstitutional. *See Seals v. McBee*, No. CV 16-14837, 2017 WL 3252673, at *5 (E.D. La. July 31, 2017) (declaring Louisiana's public intimidation law unconstitutional). Normally, if an officer relies on a statute to make an arrest that is later declared unconstitutional, she is shielded from liability. Indeed, under Louisiana law, officers are exempted "from liability even if the statute upon which they rely is later declared unconstitutional as long as the officers reasonably believed it valid at the time they acted." *Domino v. Crowley City Police Dep't*, 65 So. 3d 289, 293 (La. Ct. App. 2011) (quoting *Kyle v. City of New Orleans*, 353 So. 2d 969, 971 (La. 1977)). The question then is whether officers could reasonably believe that Louisiana's public intimidation statute was valid at the time of Mr. Aubin's arrest.

A statute that criminalizes entirely non-violent threats to an officer's employment is so patently and obviously unconstitutional, that no reasonable officer could believe it to have been valid. Time and again, the Supreme Court has upheld the right of citizens to criticize the police. The Court has declared that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 454 (1987). The Court has also noted that "[s]peech is often provocative and challenging . . . [but it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* at 461.

14

In *Hill*, for example, the Court struck down a city ordinance that prohibited "oppos[ing], molest[ing], abus[ing] or interrupt[ing] any policeman in the execution of his duty. 482 U.S. at 455, 465-67. In *Lewis v. City of New Orleans*, 415 U.S. 130, 132–34 (1974), the Court struck down an ordinance making it unlawful "wantonly to curse or revile or to use obscene or opprobious language toward or with reference to any member of the city police while in the actual performance of his duty[.]" Moreover, for the reasons previously offered in the Court's ruling on Sheriff Ard's official capacity claims, threatening to have an officer fired, does not constitute a "true threat" because it is not an "expression of an intent to commit an act of unlawful violence." *See Black*, 538 U.S. at 359 (2003). To the contrary, it is a decidedly non-violent comment.[6]

In situations similar to the instant case, other courts have concluded that even though an officer relied on a state statute that had not yet been declared unconstitutional, it was unreasonable for them to do so because the statute was patently unconstitutional. For example, in *Lawrence v. Reed*, 406 F.3d 1224, 1232 (10th Cir. 2005), the court held that it was unreasonable for an officer to rely on an ordinance allowing for the destruction of derelict automobiles without a hearing because the official could not reasonably have concluded that his actions were

---

[6] Courts have held that statements far worse than Mr. Aubin's that were directed toward the police are protected by the First Amendment. *See Gooding v. Wilson*, 405 U.S. 518 (1972)("White son of a b*tch, I'll kill you," "You son of a b*tch, I'll choke you to death," and "You son of a b*tch, if you ever put your hands on me again, I'll cut you all to pieces."); *Sandul v. Larion*, 119 F.3d 1250, 1255–56 (6th Cir. 1997) (shouting f*** you and giving an officer the middle finger); *Buffkins v. City of Omaha*, 922 F.2d 465, 472 (8th Cir. 1990) ("I will have a nice day, a**hole."); *Barboza v. D'Agata*, 151 F. Supp. 3d 363, 370 (S.D.N.Y. 2015) ("f*** you shitty town b*tches"); *Jackson v. City of New York*, 939 F. Supp. 2d 235, 248 n.5 (E.D.N.Y. 2013) ("f***ing pig").

consistent with due process. In *Carey v. Nevada Gaming Control Boardd.*, 279 F.3d 873, 882 (9th Cir. 2002), the court held that it was unreasonable for an officer to rely on statutes requiring individuals stopped pursuant to *Terry* to identify themselves because there is a clearly established Fourth Amendment right not to identify oneself.

Further still, in *Guillemard-Ginorio v. Contreras-Gomez*, 490 F.3d 31, 40 (1st Cir. 2007), the court held that it was unreasonable for state officials to rely on a statute that allowed them to suspend a professional license without a hearing because the statute was patently unconstitutional, in violation of the Due Process Clause.[7] Based on the Supreme Court's repeated and long-standing precedent validating the right of citizens to verbally criticize police officers, no reasonable officer could rely on Louisiana's public intimidation statute to arrest a person who threatens to have them fired. Accordingly, Mr. Aubin's Motion for Partial Summary Judgment on his false arrest claim is granted.

### 3. Malicious Prosecution

The elements of a malicious prosecution claim are: "(1) the commencement or continuation of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting

---

[7] The Court recognizes that the cited cases arise in the qualified immunity context and not under Louisiana law. However, there does not appear to be a difference between Louisiana law, which requires courts to consider if "officers reasonably believed [the statute they relied on was] valid at the time they acted" and qualified immunity which requires courts to consider if it was unreasonable for an officer to rely on a statute because it is "grossly and flagrantly unconstitutional." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).

16

to plaintiff." *Deville v. Marcantel*, 567 F.3d 156, 173 (5th Cir. 2009) (citing *Jones*, 448 So.2d at 1271). Damages are presumed when the other elements of malicious prosecution are present.

The first three elements of a malicious prosecution are not in dispute. (Doc. 77 at 14–15). Mr. Aubin was arrested by Deputy Durkin and the charges against Mr. Aubin were dismissed. Sheriff Ard thus argues that Mr. Aubin is not entitled to summary judgment because Deputy Durkin arrested him with probable cause and he did not act with malice. *Id.* Where, as here, charges are dismissed "prior to trial, lack of probable cause and malice are presumed and the burden is on the defendant to prove he acted with probable cause and without malice." *Watson v. Church's Fried Chicken, Inc.*, 527 So.2d 979, 981 (La. Ct. App. 1988).

Deputy Durkin argues that he acted without malice. The Louisiana Supreme Court has defined malice as "[a]ny feeling of hatred, animosity, or ill will toward the plaintiff[.]" *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987). Louisiana's highest court has also held that malice exists "when the defendant uses the prosecution for the purpose of obtaining any private advantage" or to "tie up the mouths of witnesses in another action, or as an experiment to discover who might have committed the crime." *Id.* (cleaned up).

Having considered the evidence in the light most favorable to Deputy Durkin, the Court cannot conclude at this stage of the proceeding that Deputy Durkin acted with malice. Indeed, Deputy Durkin submitted an affidavit in which he asserted that he had no personal malice or vendetta toward Mr. Aubin, and that he arrested him

17

because he believed Mr. Aubin committed the offenses of public intimidation, interference with law enforcement investigation, and resisting an officer. (Doc. 77-2 at ¶ 21). He also stated that his prior interactions with Mr. Aubin did not influence his decision to arrest him. (Doc. 77-2 at ¶ 21). Although Mr. Aubin claims that Deputy Durkin acted with malice, Deputy Durkin has produced sufficient evidence, taken in the light most favorable to him, to show that there is a material dispute of fact about whether he acted with malice. The Court therefore denies Mr. Aubin's Motion for Partial Summary Judgment on his malicious prosecution claim.

### 4. Battery

Under Louisiana law, battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). However, a police officer may use reasonable force during a lawful arrest. *Gerard v. Par. of Jefferson*, 424 So. 2d 440, 444 (La. Ct. App. 1982). Even the use of "reasonable force" can be a battery, if the police officer is making an unlawful arrest. *Id.*

There are genuine issues of material fact regarding whether Deputy Durkin committed battery. Mr. Aubin claims that during his interaction with Deputy Durkin the Deputy threw Mr. Aubin on the front of a patrol car, hit him in the head with handcuffs, twisted his right arm behind his back, kicked his legs and hit him in the head and buttocks repeatedly. (Doc. 41-3 at p. 2–4). Deputy Durkin disputes these facts. In his deposition testimony, he indicated that he didn't recall hitting Mr. Aubin with handcuffs, that he only placed Mr. Aubin's arm behind his back and put him

against the patrol car after he resisted arrest, that he did not kick his legs or grab him by the neck, and that he did not hit Mr. Aubin in the head. (Doc. 77-4 at 134:22–139:16). There is therefore a genuine dispute of material fact about whether Deputy Durkin committed battery. Mr. Aubin's Motion for Partial Summary Judgment on his battery claim is denied.

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Doc. 41)** is **GRANTED IN PART AND DENIED IN PART**. Mr. Aubin is entitled to summary judgment on his state law false arrest claim.

**IT IS FURTHER ORDERED** that the **Motion to Strike (Doc. 81)** is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss for Failure to State a Claim (Doc. 119)** is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' state law failure to train claim is **DISMISSED**.

Baton Rouge, Louisiana, this 28th day of September, 2017.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA